DAVIS WRIGHT TREMAINE LLP
MATTHEW DIGGS (*pro hac vice*)
  matthewdiggs@dwt.com
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
Telephone: (206) 622-3150
Fax: (206) 757-7700

ANNA R. BUONO (State Bar No. 232753)
  annabuono@dwt.com
MARCY BLATTNER MICALE (State Bar No. 319868)
  marcymicale@dwt.com
PETER K. BAE (State Bar No. 329158)
  peterbae@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendant
PACIFIC TOXICOLOGY LABORATORIES

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF CALIFORNIA *ex rel.* YVONNE HUEMOELLER, and YVONNE HUEMOELLER, individually,<br><br>        Plaintiffs,<br><br>    vs.<br><br>PACIFIC TOXICOLOGY LABORATORIES et al.,<br><br>        Defendants. | Case No. **2:19-CV-02900-MWF-MRWx**<br><br>**DEFENDANT PACIFIC TOXICOLOGY LABORATORIES' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Declaration of Matthew D. Diggs, Request for Judicial Notice, and Proposed Order filed concurrently*]<br><br>Assigned to the Hon. Michael W. Fitzgerald<br>Dept.: Courtroom 5A<br><br>Date:    March 21, 2022<br>Time:    10:00 a.m.<br><br>Action Filed: April 15, 2019<br>Action Unsealed: August 3, 2021 |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 21, 2022, at 10:00 a.m. in Courtroom 5A of the United States District Court, Central District of California, located at 350 W. 1st Street, Los Angeles, CA 90012-4565, Defendant Pacific Toxicology Laboratories ("Defendant" or "PacTox") will and hereby does move, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing, without leave to amend, the First Amended Complaint ("FAC") of Yvonne Huemoeller ("Relator") in its entirety on the following grounds:

### Federal Law Claims

### First, Second, and Third Causes of Action—Federal False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)(A), (B), and (C)

The FCA claims should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6):

1.      The FAC does not plead, much less satisfy the plausibility standard set forth in Fed. R. Civ. P. 8(a) nor the particularity required by Fed. R. Civ. P. 9(b), any false or fraudulent "claim[s]" actually submitted or caused to be submitted by Defendant to government payors. *See* 31 U.S.C. § 3729(a)(1)(A) & (B).

2.      The FAC does not plead, much less satisfy the plausibility standard set forth in Fed. R. Civ. P. 8(a) nor the particularity required by Fed. R. Civ. P. 9(b), remuneration necessary to show a violation of the Anti-Kickback Statute ("AKS"), to the extent Relator's FCA claim is predicated on the AKS. Relator does not allege how Defendant's pricing arrangement or any of the purported "inducements" it allegedly provided to clients constituted improper remuneration under the AKS. *See* 42 U.S.C. § 1320a-7b(1)(B), (2)(B).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

3.     The FAC does not plead, much less satisfy the plausibility standard set forth in Fed. R. Civ. P. 8(a) nor the particularity required by Fed. R. Civ. P. 9(b), causation, i.e., facts showing that any claims submitted by Defendant were the result of any kickbacks necessary to show a violation of the AKS, to the extent Relator's FCA claim is predicated on the AKS.  The FAC does not allege any facts showing that any purported inducement was intended to result in, or did result in, referred services that were then billed by Defendant to any state or federal government payor.  *See* 42 U.S.C. § 1320a-7b(g).

4.     The FAC does not plead facts sufficient to support Relator's claim that Defendant acted with the requisite scienter to establish a claim under the FCA.  The FAC does not allege that Defendant acted knowingly under the FCA.  *See* 31 U.S.C. § 3729(b)(1); 42 U.S.C. § 1320a-7b(b)(3)(B); 42 C.F.R. 1001.952(i) (2021).

5.     The FAC does not plead facts sufficient to support Relator's new claim that she was an independent contractor and, as a result, that commission payments fell outside of the AKS's "Employee Bona Fide Safe Harbor." The FAC alleges no facts, much less satisfy the pleading standards, to show that Defendant knew that any payments to Relator fell outside the "Employee Bona Fide Safe Harbor" of the AKS.  *See* 42 U.S.C. § 1320a-7b(b)(3)(B); 42 C.F.R. 1001.952(i) (2021).

6.     The FAC does not plead, much less satisfy the plausibility standard set forth in Fed. R. Civ. P. 8(a) nor the particularity required by Fed. R. Civ. P. 9(b), facts sufficient to show that Defendant participated in a conspiracy to submit false claims.  *See* 31 U.S.C. § 3729(a)(1)(C).

7.     The FCA claims pre-dating April 15, 2013, should be dismissed as untimely.  *See* 31 U.S.C. § 3731(b)(1), (2).  The FCA claims are subject to a six-year limitations period.  Given that Relator filed the original Complaint on April 15, 2019, FCA claims prior to April 15, 2013 are barred by the statute of limitations.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**State Law Claims**

**Fourth, Fifth, and Sixth Causes of Action—California False Claims Act ("CFCA"), Cal. Govt. Code § 12651(a)(1), (a)(2), and (a)(3); and Seventh Cause of Action—California Insurance Frauds Prevention Act ("CIFPA"), Cal. Ins. Code § 1871.7(b)**

All state law claims should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  The only statutory provision under which Relator could plead jurisdiction over state law claims is 31 U.S.C. § 3732(b).  Should the FCA claims be dismissed, there is no basis for this Court to exercise jurisdiction over the CFCA and CIFPA claims.

Should this Court be inclined to exercise supplemental jurisdiction over the CFCA claims, they are subject to dismissal for the same reasons as the FCA claims:

1.      The CFCA claims should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6) because they are not pleaded with particularity and have the same deficiencies as the FCA claims.  *See* Cal. Govt. Code § 12651(a)(1), (2), (3) (2018).

Should this Court be inclined to exercise supplemental jurisdiction over the CIFPA claims, these claims are subject to dismissal for the following reasons:

2.      The CIFPA claims should be dismissed in their entirety as untimely under the three-year statute of limitations.  Relator alleges that she stopped working for Defendant in 2015, but did not file the original Complaint until April 15, 2019.  See Cal. Ins. Code § 1871.7(l)(1) (2010).

3.      Even if the Court were to consider the merits of the CIFPA claims, they should also be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6) because they are not pleaded with particularity and have other deficiencies exhibited by the federal FCA and CFCA claims.  See Cal. Ins. Code § 1871.7(b) (2010).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

4.      For the same reasons as the FCA conspiracy fails, the Complaint does not plead facts sufficient to show that Defendant participated in a conspiracy to submit false claims under CIFPA.  See Cal. Ins. Code § 1871.7(b).

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all other pleadings and papers on file in this action, any oral argument at the hearing on the Motion, and any further matters of which this Court may take judicial notice.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on January 21, 2022.

DATED: February 7, 2022

DAVIS WRIGHT TREMAINE LLP
MATTHEW DIGGS
ANNA R. BUONO
MATTHEW C. ONYETT
PETER K. BAE


By: */s/ Matthew Diggs*
MATTHEW DIGGS
Attorneys for Defendant
PACIFIC TOXICOLOGY
LABORATORIES

NOTICE OF MOTION & MOTION TO DISMISS; MPA

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ................................... 2

    A.   Procedural History ................................................................ 2

    B.   Factual Allegations Relevant to the Motion ................................ 2

    C.   Statutory Claims ................................................................... 4

III.  LEGAL STANDARDS ..................................................................... 4

    A.   Plausibility Standard .............................................................. 4

    B.   Heightened Pleading Requirements Under Fed. R. Civ. P. 9(b) ......... 4

    C.   Statutory Framework ............................................................. 5

        1.   Federal and State False Claims Acts ................................... 5

        2.   Anti-Kickback Statutes ................................................... 6

        3.   California Insurance Fraud Prevention Act ............................ 7

IV.   ARGUMENT ................................................................................ 7

    A.   Relator's FCA Claims Should be Dismissed. ................................ 7

        1.   FCA Allegations Premised on the Anti-Kickback Statute......... 8

            a.   The "Pass-Through" Billing Allegations Are Fatally Flawed................................................................. 8

                (1)   Relator Fails to Allege Remuneration. ................. 9

                (2)   Relator Fails to Allege an Exchange of Drug Testing Orders for Purported Remuneration. ....... 10

                (3)   Unsupported Allegations about Testing Location Statements Are Insufficient to State a Claim. ..... 11

             b.   Other Alleged "Inducements" to Physician Practices Are Insufficient to State a Claim. ................................. 12

             c.   Allegations Regarding Payments to Sales Representatives Are Insufficient to State a Claim........ 14

        2.   Allegations Regarding "Unnecessary Testing" Are Inadequate. ............................................................... 16

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

a.    Allegations Regarding the Use of Custom Profiles Fail to State a Claim under the FCA. ........................... 16

b.    Relator's Sundry Allegations Regarding Alleged Medically Unnecessary Tests are Insufficient to State a Claim under the FCA. ....................................... 19

3.    Unbundled Test Allegations Do Not State a Claim under the FCA. .................................................................... 20

4.    The FAC Fails to Plead a Conspiracy to Violate the FCA. ...... 21

5.    The Statute of Limitations Precludes FCA Claims Pre-Dating April 15, 2013. ............................................... 22

B.    Relator's State Law Claims Should Be Dismissed. .......................... 22

1.    This Court Should Decline to Exercise Supplemental Jurisdiction Over the State Law Claims. ................................. 22

2.    The CFCA Claims Are Subject To Dismissal for the Same Reasons as the FCA Claims. .................................................... 23

3.    The CIFPA Claims Should Likewise Be Dismissed. ............. 23

a.    The CIFPA Claims are Wholly Barred by the Statute of Limitations. .............................................. 23

b.    The CIFPA Claims are Further Subject to Dismissal for the Same Reasons as the FCA Claims. ................... 24

V.    THE COURT SHOULD DENY LEAVE TO AMEND .............................. 25

VI.   CONCLUSION. .......................................................................................... 25

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Am. Title Ins. Co. v. Lacelaw Corp.*,
  861 F.2d 224 (9th Cir. 1988) ................................................................... 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................... 4, 19

*Bailey v. Gatan, Inc.*,
  783 F. App'x 692 (9th Cir. 2019) ......................................................... 23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................... 4

*Bly-Magee v. California*,
  236 F.3d 1014 (9th Cir. 2001) ......................................................... 5, 11

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ................................................................. 5

*Flanagan v. Bahal*,
  2015 WL 9450826 (D.N.J. Dec. 22, 2015) .......................................... 19

*Grogan v. Health Officer of County of Riverside*,
  221 F.3d 1348 (9th Cir. 2000) ............................................................. 25

*Hinton v. Pac. Enters.*,
  5 F.3d 391 (9th Cir. 1993) ................................................................... 22

*Hooper v. Lockheed Martin Corp.*,
  688 F.3d 1037 (9th Cir. 2012) ............................................................. 20

*Jackson v. Bank of Haw.*,
  902 F.2d 1385 (9th Cir. 1990) ............................................................. 25

*Klaczak v. Consol. Med. Transp.*,
  458 F. Supp. 2d 622 (N.D. Ill. 2006) .................................................... 6

*Maa v. Ostroff*,
  2013 WL 1703377 (N.D. Cal. Apr. 19, 2013) ............................... 19, 24

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*McDonnell v. Cardiothoracic & Vascular Surgical Assocs., Inc.*,
  2004 WL 3733402 (S.D. Ohio July 28, 2004)........................................6

*Nationwide Mut. Ins. Co. v. Darden*,
  503 U.S. 318 (1992).............................................................15

*People v. Palma*,
  40 Cal.App.4th 1559 (1995) ..................................................6, 23

*Rothschild v. Tyco Internat. (US), Inc.*,
  83 Cal.App.4th 488 (2000) .......................................................23

*State of California ex rel. Metz v. CCC Information Services, Inc.*,
  149 Cal.App.4th 402 (2007) ......................................................7

*Student Loan Mktg. Ass'n v. Hanes*,
  181 F.R.D. 629 (S.D. Cal. 1998) .................................................4

*United States ex rel. Alfatooni*, 314 F.3d 995, 1002 (9th Cir. 2002)........................7

*United States ex rel. Brown v. Celgene Corp.*,
  2014 WL 3605896 (C.D. Cal. July 10, 2014)......................................24

*United States ex rel. Cafasso. v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) .............................................*passim*

*United States ex rel. Clausen v. Lab Corp. of Am., Inc.*,
  290 F.3d 1301 (11th Cir. 2002) ...............................................8, 12

*United States ex rel. Ebeid v. Lungwitz*,
  616 F.3d 993 (9th Cir. 2010) ....................................................5

*United States ex rel. Gough v. Eastwestproto, Inc.*,
  2018 WL 6929332 (C.D. Cal. Oct. 24, 2018) .........................9, 10, 16, 22

*United States ex rel. Grenadyor v. Ukranian Vill. Pharmacy, Inc.*,
  772 F.3d 1102 (7th Cir. 2014) ...................................................10

*United States ex rel. Groat v. Bos. Heart Diagnostics Corp.*,
  296 F. Supp. 3d 155 (D.D.C. 2017)...............................................16

*United States ex rel. Hendow v. Univ. of Phoenix*,
  461 F.3d 1166 (9th Cir. 2006) ....................................................8

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*United States ex rel. Hopper v. Anton,*
  91 F.3d 1261 (9th Cir. 1996) ............................................................. 8

*United States ex rel. Lee v. Corinthian Colleges,*
  655 F.3d 984 (9th Cir. 2011) ....................................................... 15, 18

*United States ex rel. Lee v. SmithKline Beecham, Inc.,*
  245 F.3d 1048 (9th Cir. 2001) ......................................................... 17

*United States ex rel. Modglin v. DJO Global Inc.,*
  114 F. Supp. 3d 993 (C.D. Cal. 2015) ............................................. 22

*United States ex rel. Modglin v. DJO Global Inc.,*
  48 F. Supp. 3d 1362 (C.D. Cal. 2014) ............................................... 5

*United States ex rel. Pasqua v. Kan-Di-Ki LLC,*
  2012 WL 12895229 (C.D. Cal. June 18, 2012) ................................. 22

*United States ex rel. Rauch v. Oaktree Medical Centre, P.C.,*
  2020 WL 1065955 (D.S.C. Mar. 5, 2020) ........................................ 13

*United States ex rel. Swoben v. United Healthcare Ins. Co.,*
  848 F.3d 1161 (9th Cir. 2016) ........................................................... 5

*United States ex rel. Woodruff v. Haw. Pac. Health,*
  560 F. Supp. 2d 988 (D. Haw. 2008), *aff'd*, 409 F. App'x 133 (9th
  Cir. 2010) ........................................................................................ 21

*United States v. Amsurg Corp.,*
  2014 WL 7336671 (E.D. Cal. Dec. 24, 2014) .................................. 23

*United States v. Anesthesia Servs. Assocs., PLLC,*
  2019 WL 7372511 (M.D. Tenn. Dec. 31, 2019) ............................... 11

*United States v. Chang,*
  2017 WL 10544289 (C.D. Cal., July 25, 2017)................................ 20

*United States v. Ctr. for Diagnostic Imaging, Inc.,*
  787 F. Supp. 2d 1213 (W.D. Wash. 2011).................................... 9, 15

*United States v. Lab. Corp. of Am. Holdings,*
  2019 WL 236799 (D.S.C. Jan. 16, 2019) ........................................ 16

*United States v. Medtronic PLC,*
  2021 WL 4816647 (C.D. Cal. Apr. 12, 2021) .........................9, 10, 15

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*United States v. Orthopedic Alliance, LLC*,
   2020 WL 6151084 (C.D. Cal. July 13, 2020)........................................24

*United States v. Orthopedic Alliance, LLC*,
   2020 WL 8173025 (C.D. Cal. Nov. 19, 2020)........................................21

*United States v. Somnia, Inc.*,
   339 F. Supp. 3d 947 (E.D. Cal. 2018) ........................................23

*United States v. Vora*,
   2022 WL 89177 (W.D. Ky. Jan. 7, 2022)........................................21

*United States v. Vora*,
   488 F. Supp. 3d 554 (W.D. Ky. 2020)........................................6, 12

**Statutes**

26 U.S.C. § 3121(d)(2)........................................14

31 U.S.C.
   § 3729........................................*passim*
   § 3729(a)(1)(A)........................................5, 6
   § 3729(a)(1)(B)........................................5
   § 3729(a)(1)(C)........................................5, 21
   § 3731(b)(1)........................................22
   § 3731(b)(2)........................................22

42 U.S.C.
   § 1320a-7b(1)(B)........................................10
   § 1320a-7b(2)(B)........................................10
   § 1320a-7b(b)........................................6, 7, 9, 10
   § 1320a-7b(b)(3)(B)........................................6
   § 1395nn(e)(8)........................................7

California Government Code
   §§ 12650 – 12656........................................6
   § 12651........................................*passim*
   § 12651(a)(1)........................................23
   § 12651(a)(2)........................................23
   § 12651(a)(3)........................................23
   § 12654(a)........................................23

vi

**Davis Wright Tremaine** LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

California Insurance Code
§ 1871.7.............................................................................*passim*
§ 1871.7(b)..................................................................................24
§ 1871.7(l)(1)...............................................................................24

California Welfare and Institutions Code
§ 14107.2..............................................................................6, 23
§ 14107.2(c)(1)..............................................................................6

**Rules**

Federal Rule of Civil Procedure
8(a)........................................................................................1, 4, 25
9(b).............................................................................................*passim*
12(b)(6)..................................................................................4, 25

Rule 9(b)'s....................................................................................13

**Regulations**

42 C.F.R.
1001.952(i).............................................................................6, 15
§ 410.32(d)(3).............................................................................16
§ 411.351(1).................................................................................14
§ 411.357 (Stark Law)..................................................................7

56 Federal Register
35952 (July 29, 1991)....................................................................6
35958 (July 29, 1991)....................................................................6

63 Federal Register
45076, 45079 (Aug. 24, 1998).....................................................16
45079 (1998 HHS OIG Compliance Program Guidance)..................18

NOTICE OF MOTION & MOTION TO DISMISS; MPA

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

In her amended complaint ("FAC") brought under the *qui tam* provisions of the federal False Claims Act ("FCA"), the California False Claims Act ("CFCA"), and the California Insurance Frauds Prevention Act ("CIFPA"), Plaintiff-Relator Yvonne Huemoeller ("Relator") summarily accuses Pacific Toxicology Laboratories ("PacTox") of a variety of "long-running kickback schemes" to defraud Medicare, Medi-Cal, and commercial insurers.  (FAC ¶ 1.)  Despite the opportunity to cure the defects in her original complaint, Relator's allegations suffer from a host of fatal pleading deficiencies.

*First*, Relator's FCA allegations fall well short of what is required to state a plausible claim for relief under Fed. R. Civ. P. Rule 8(a), much less Rule 9(b).  At no point does Relator allege the specifics of any "false claims" actually submitted or caused to be submitted by PacTox to government payors, nor any facts showing that any claims were the result of kickbacks, or otherwise explain her alleged basis for falsity under the FCA.  Lacking evidence of a false claim, or any agreement to submit such a claim, Relator likewise does not (and cannot) allege facts showing PacTox participated in a conspiracy to submit false claims.

*Second*, the Court should decline to exercise supplemental jurisdiction over Relator's state law claims, as there is no statutory authority for jurisdiction if the FCA claims are dismissed.

*Third*, assuming the Court exercises supplemental jurisdiction for purposes of this Motion, Relator's CFCA and CIFPA claims are fatally flawed for the same reasons as the FCA claims.  The CIFPA claims are additionally barred in their entirety by the statute of limitations.

Relator has not bothered to correct these deficiencies in the almost three years since filing this action.  It is therefore clear she cannot cure these flaws, and the FAC should be dismissed without leave to amend.

NOTICE OF MOTION & MOTION TO DISMISS; MPA

Davis Wright Tremaine LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Procedural History

Relator filed her Complaint on April 15, 2019, more than three and a half years after her employment relationship with PacTox ended.  (FAC ¶ 33.)  After the United States and the State of California declined to intervene (Dkt. 27 and Dkt. 29), and with the consent of the United States (Dkt. 36) and the State of California (Dkt. 40), Relator voluntarily dismissed twenty defendants, proceeding only against PacTox.  (Dkt. 33.)  The Complaint was unsealed on August 3, 2021, and PacTox was served on October 26, 2021.  (Dkt. 28 and 51.)  PacTox moved to dismiss all claims in the Complaint on December 16, 2021.  (Dkt. 62.)  Rather than respond to PacTox's motion, Relator filed the FAC under seal on January 7, 2022.  (Dkt. 64.)  The Court unsealed the FAC on January 11, 2022.  (Dkt. 65.)  The FAC does little to cure the deficiencies of the initial complaint and is equally devoid of the specificity required to survive a motion to dismiss.

### B.   Factual Allegations Relevant to the Motion

PacTox is a toxicology laboratory based in Chatsworth, California.  (FAC ¶ 39.)  Relator was employed as a sales representative for PacTox in Arizona from December 20, 2010, until September 15, 2015.[1]  (*Id*. ¶ 33.)  In that role, Relator recruited physicians to refer laboratory testing to PacTox.  (*Id*. ¶¶ 105-106.)

Relator alleges PacTox defrauded payors in four ways:  (1) engaging in a "pass-through" billing scheme with physicians and providing other incentives to physicians (*id*. ¶¶ 136-142); (2) paying kickbacks in the form of commission payments to Relator and unspecified other sales agents (*id*. ¶ 125); (3) facilitating physicians' ordering of medically unnecessary testing (*id*. ¶¶ 163-170); and (4) submitting claims for "unbundled" tests (*id*. ¶¶ 171-178).

---

[1] Relator now claims that she was an independent contractor.  (FAC ¶¶ 16, 19, 34-35.)  As explained *infra*, Section IV(A)(1)(c), Relator premised a prior lawsuit against PacTox on her status as an employee.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**Alleged "Pass-Through" Billing Scheme and Other Incentives to Providers.**  Under the alleged "pass-through" billing scheme, certain physicians and physician practices purchased toxicology testing services from PacTox and then billed commercial health plans for the testing.  (*Id.* ¶¶ 136-142.)  Relator alleges that PacTox instructed the physicians to fill out unspecified "forms" stating the testing occurred at the physicians' practices.  (*Id.* ¶ 138.)  Relator generally alleges that PacTox charged physicians less for the tests than the reimbursement received by the physicians from insurers (*id.* ¶¶ 139-140), and that "in return," the physicians allowed PacTox to bill and collect reimbursements for tests on patients enrolled in government health plans.  (*Id.* ¶ 142.)  Relator further alleges that PacTox provided additional incentives to providers: (i) point-of-care test cups ("POCT" cups) at no cost (*id.* ¶¶ 179-181); (ii) "collector personnel" who were paid by PacTox to collect and process samples at providers' offices and ship them to PacTox for testing (*id.* ¶¶ 185-190); and (iii) debt forgiveness to a client by not collecting payments owed to PacTox. (*id.* ¶¶ 191-194).

**Alleged Kickbacks to Sales Employees.**  Relator alleges that PacTox paid Relator commissions based on a percentage of reimbursements PacTox collected from tests referred by her "physician clients," which Relator alleges was an unlawful kickback that "took into account the volume or value of referrals generated by Defendant Physicians and the Defendant Laboratories."  (*Id.* ¶ 114.)  "On information and belief," Relator extrapolates her payment arrangement to PacTox's entire sales force.  (*Id.* ¶ 124.)

**Alleged Unnecessary Testing.**  Relator alleges generally that PacTox's "co-conspirator Physicians" performed "unnecessary testing" (*id.* ¶¶ 163-170), which PacTox facilitated by providing a "customized drug panel form" which would "help [the Defendant Physicians] create standing orders for . . . testing."  (*Id.* ¶ 164.)  Relator further alleges that PacTox performed and billed for various other purportedly unnecessary tests ordered by physicians.  (*Id.* ¶¶ 148, 169, 170.)

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**Unbundled Tests.**  Finally, Relator alleges that PacTox billed tests for separate substances separately when it should have bundled and billed the tests under a single billing code.  (*Id*. ¶¶ 171-178.)

### C.   Statutory Claims

Based on the above factual allegations, Relator asserts three claims under the federal FCA (*Id.* ¶¶ 195-209); three claims under the CFCA (*Id.* ¶¶ 210-225); and one claim under the CIFPA.  (*Id.* ¶¶ 226-228.)  Each claim should be dismissed.

### III.   LEGAL STANDARDS

### A.   Plausibility Standard

To survive a motion under Fed. R. Civ. P. 12(b)(6) and 8(a), a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility for entitlement to relief." *Id*.  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Mktg. Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint … must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007).

### B.   Heightened Pleading Requirements Under Fed. R. Civ. P. 9(b)

In addition to the plausibility standard, an FCA claim and the state law counterparts alleged here must comply with the heightened pleading standards of Fed. R. Civ. P. 9(b) and "state with particularity the circumstances constituting fraud or mistake." *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,

4

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

637 F.3d 1047, 1054–55 (9th Cir. 2011); *see also United States ex rel. Ebeid v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010); *United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) ("[M]ere conclusory allegations of fraud are insufficient" for a relator to carry her pleading burden for an FCA claim.  In order to "properly plead fraud with particularity under Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp*., 889 F.3d 956, 964 (9th Cir. 2018) (citations omitted).

When analyzing the requirements of Rule 9(b) for claims brought under the FCA, the Ninth Circuit described the purpose of the rule as follows:

> Rule 9(b) serves not only to give notice to defendants of the specific fraudulent conduct against which they must defend, but also to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.

*Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) (citations omitted). Thus, "to satisfy Rule 9(b), a plaintiff must specify the content of the fraudulent representation, the person who made it, when and where the representation was made, and the manner in which it was untrue and misleading, or the circumstances indicating that it was false." *United States ex rel. Modglin v. DJO Global Inc.*, 48 F. Supp. 3d 1362, 1388 (C.D. Cal. 2014).

### C.   Statutory Framework

#### 1.   Federal and State False Claims Acts

The federal FCA imposes liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the federal government; "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" to the federal government; or "conspires to commit a violation" of these provisions.  31 U.S.C.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

§§ 3729(a)(1)(A), (B), (C).  Under §§ 3729(a)(1)(A) or (1)(B), "to commit conduct actionable under the FCA, one must, in some way, falsely assert entitlement to obtain or retain government money or property."  *Cafasso*, 637 F.3d at 1056.  The CFCA mirrors the FCA but applies to claims submitted to the State of California.  *See* Cal. Gov't Code §§ 12650-12656.

## 2.  Anti-Kickback Statutes

Certain of Relator's alleged fraudulent schemes assert violations of the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) ("AKS"), as the basis for a false claim to the government.  (*See, e.g.*, FAC ¶¶ 126-162 (pass-through billing scheme), and ¶ 19 (alleged kickbacks to employees).)  Under the AKS, it is illegal to knowingly and willfully pay or receive "remuneration" – defined broadly to include the transfer of anything of value – in return for the referral of services billed to a federal health care program.  *See* 42 U.S.C. § 1320a-7b(b); 56 Fed. Reg. 35952-01, 35958 (July 29, 1991); *see also Klaczak v. Consol. Med. Transp.*, 458 F. Supp. 2d 622, 626 (N.D. Ill. 2006) ("Relators must prove that [defendants] accepted illegal remuneration, meaning something of value, in return for referrals.").  The AKS's "willfulness" requirement requires proof of purpose to commit a wrongful act. *McDonnell v. Cardiothoracic & Vascular Surgical Assocs., Inc.*, 2004 WL 3733402, at *8 (S.D. Ohio July 28, 2004); *United States v. Vora*, 488 F. Supp. 3d 554, 564 (W.D. Ky. 2020).  The federal AKS has numerous statutory and regulatory "safe harbors" that expressly protect certain types of financial arrangements from prosecution under the AKS, including compensation paid by an employer to a *bona fide* employee.  42 U.S.C. § 1320a-7b(b)(3)(B); 42 C.F.R. 1001.952(i) (2021).  The California (Medi-Cal) Anti-Kickback Statute is patterned after the AKS, including maintaining the federal version's safe harbor for payments to *bona fide* employees.  *See* Cal. Welfare and Inst. Code § 14107.2(c)(1) (2011); *People v. Palma*, 40 Cal.App.4th 1559, 1565, n.5 (1995) (Section 14107.2 "largely adopts the language of the federal statute on which it is based," including the *bona fide* employment

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

exception) (citing 42 U.S.C. § 1320a-7b(b)).

### 3. California Insurance Fraud Prevention Act

CIFPA prohibits the presentation of fraudulent claims to the California workers' compensation program or private insurers.  Cal. Ins. Code § 1871.7 (2011); *see State of California ex rel. Metz v. CCC Information Services, Inc.*, 149 Cal.App.4th 402, 413 (2007) ("[T]aken as a whole, section 1871 et seq. is specifically tailored toward preventing and punishing the making of fraudulent claims to insurance companies.") (internal quotation and citation omitted).

## IV.   ARGUMENT

### A.   Relator's FCA Claims Should be Dismissed.

Relator generally alleges that PacTox violated the FCA by (1) submitting claims resulting from violations of the AKS, including by (a) participating in a "pass-through" billing arrangement, (b) offering POCT cups, specimen collectors and debt forgiveness to providers, and (c) making commission-based payments to Relator and other PacTox sales representatives; (2) submitting claims for "medically unnecessary" testing; and (3) submitting claims for "unbundled" tests, in which multiple tests run on a single sample were billed individually.  As described below, Relator fails to adequately plead an FCA violation under any of these theories.[2]

Common to all of Relator's theories is her failure to allege that any specific false claims were submitted to the government in connection with any of the purported schemes.  The FCA requires a relator to "show *an actual false claim* for payment being made to the Government."  *United States ex rel. Alfatooni*, 314 F.3d

---

[2] The Stark Law is cursorily cited as a predicate violation in connection with Relator's allegations of pass-through billing, provision of POCT cups and specimen collectors.  (FAC ¶¶ 7, 153 n.19, 184, 190.)  These claims fail for the same reasons Relator's claims fail under the FCA and the additional reason that the Stark Law statutorily excepts from its prohibited financial relationships "[p]ayments made by a physician . . . to a laboratory in exchange for the provision of clinical laboratory services . . . ."  42 U.S.C. § 1395nn(e)(8).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

995, 1002 (9th Cir. 2002) (emphasis in original) (quotations omitted); *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1173 (9th Cir. 2006) ("[F]or a false statement or course of action to be actionable . . . it is necessary that it involve an actual claim . . . ").  This is true for each and every subsection of the FCA under which Relator seeks relief.  *Cafasso*, 637 F.3d at 1055.  In other words, the FCA "attaches liability, not to [the alleged] underlying fraudulent activity, but to the <u>claim for payment</u>."  *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996) (emphasis added) (quotations omitted).  All of Relator's FCA claims fail for this reason alone.

> **1.    FCA Allegations Premised on the Anti-Kickback Statute.**
> **a.    The "Pass-Through" Billing Allegations Are Fatally Flawed.**

In her first claim, Relator alleges PacTox violated the FCA by furnishing testing services to physicians at prices that were purportedly "substantially lower than the reimbursement" physicians received from insurance plans.  (FAC ¶ 140.)  This general scheme fails to state a claim under the FCA and does not satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b).  Relator identifies two lists of claims, in Exhibits J and K, that she asserts are "exemplar claims" of the alleged "pass-through" billing scheme.  (*Id*. ¶¶ 143-144).  But Relator fails to support her conclusory statement that the listed claims "were submitted by PacTox in violation of the AKS."  (*Id*. ¶ 145).  Relator does not allege why any of these claims constitutes a false claim, apart from her baseless and separate assertion that some of the underlying tests were medically unnecessary.  (*Id*. ¶¶ 145-148.)  Nor does Relator explain how the billed amounts listed in Exhibits J and K relate to a specific violation of the AKS.  Indeed, neither Exhibit evidences an actual submission to the government – there are no submission dates associated with the purported claims, nor is there any evidence suggesting that the purported claims were ever submitted to a government insurer.  (*See id*., Exs. J, K.)  Such allegations fall short.  *United States ex rel. Clausen v. Lab Corp. of Am., Inc.*, 290 F.3d 1301, 1312–13 (11th Cir.

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

2002) ("No actual dates were alleged. . . . No copy of a single bill or payment was provided.") (upholding dismissal of false claims for failure "to provide any additional information linking the testing schemes to the submission of any actual claims or any actual charges").

### (1)   Relator Fails to Allege Remuneration.

Relator never explains why PacTox's pricing structure was unlawful.  She alleges "per patient specimen" prices within a broad range (FAC ¶ 139) without any reference to a price that would be fair market value.  Relator's unsupported allegation that physicians paid PacTox a "loss leader," a term she fails to define, is wholly insufficient.  Courts that have considered similar allegations have concluded that they do not support an FCA claim because they fail to allege the necessary element of remuneration under the AKS.  For example, in dismissing an FCA complaint related to "below cost" pricing of ambulance transport services, District Judge Gee stated, "allegations as to the 'below-cost' rates, without more, do not sufficiently demonstrate that [defendant] received any remuneration."  *United States ex rel. Gough v. Eastwestproto, Inc.*, 2018 WL 6929332, at *8 (C.D. Cal. Oct. 24, 2018).  Similarly, where a relator fails to allege what the "fair market value of [the relevant services]" would be, the relator cannot "plausibly allege that the 'discounted' services constituted remuneration."  *United States v. Ctr. for Diagnostic Imaging, Inc.*, 787 F. Supp. 2d 1213, 1223 (W.D. Wash. 2011); *see also United States v. Medtronic PLC*,  2021 WL 4816647, at *7 (C.D. Cal. Apr. 12, 2021) ("Relator's many allegations of overpayment are conclusory and, without an alleged point of fair market value for reference, the Court cannot find those allegations supported by fact.").

Relators unsupported allegations that physicians made "handsome profits" do not cure this deficiency.  (*See* FAC ¶ 141 and Ex. I.)  Relator provides no accounting for the costs a provider might incur in chasing insurance payments or arranging for PacTox to bill those claims that could not be recouped.  Exhibit I, if

NOTICE OF MOTION & MOTION TO DISMISS; MPA

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

anything, shows the unpredictable nature of insurance reimbursements, as many of the bills listed indicate that the services were not paid by insurance or that the claims had not yet been processed, well after the service date.  (FAC, Ex. I.)

### (2)    Relator Fails to Allege an Exchange of Drug Testing Orders for Purported Remuneration.

Relator's pleading deficiencies are exacerbated by her near silence concerning the link between any pricing arrangement for non-Medicare patient samples, on the one hand, and referral to PacTox of government health care program-reimbursed testing services, on the other hand.  "When a violation of the AKS forms the basis of an FCA claim . . . the claimant must establish a connection between the alleged kickback scheme and actual false claims submitted to the government." *Medtronic PLC*, 2021 WL 4816647, at *5.  Failure to do so is fatal to Relator's complaint, insofar as the AKS requires that remuneration be paid *in return for*, or *to induce* the ordering of, services covered by a federal health care program. *See* 42 U.S.C. § 1320a-7b(1)(B), (2)(B).

An FCA claim cannot be based on mere suspicion or conjecture that an actionable kickback actually occurred.  *See United States ex rel. Grenadyor v. Ukranian Vill. Pharmacy, Inc*., 772 F.3d 1102, 1107 (7th Cir. 2014) (affirming trial court's dismissal of FCA claim because relator failed establish connection between purported kickback and claim submitted).  With a single two-word phrase, the FAC summarily alleges that "in return" for the purported favorable pricing of certain services, physicians agreed to allow testing of government-insured and managed-care patients to be billed to insurance by PacTox.  (FAC ¶ 142.)  But even if Relator could allege the existence of unlawful remuneration (which she cannot), such remuneration is the basis for an AKS violation *only if* Relator alleges sufficient facts to plausibly allege that physicians referred federally-insured services to PacTox in exchange for that remuneration.  *See Eastwestproto, Inc.*, 2018 WL 6929332, at *5–6 ("Relators' allegation that LifeLine gave AHMC employees cash

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

for 20 calls that in turn resulted in falsely submitted claims for ambulance transport services is simply too conclusory to state a claim under the FCA."). Indeed, the FAC does not allege a single test referred in exchange for a "loss leader" on specimen pricing and makes no attempt to connect any single claim to a preferential arrangement between PacTox and the physician practice. In fact, the contracts included as Exhibits (one of which is wholly unsigned and others which are not mutually signed) fail to support Relator's position. They do the opposite. Each contract specifies that prices are set in advance, remain for a year, and are not tied to referral volume in ANY manner. (FAC, Exs. E, G, H.) Without particularized allegations showing discount-pricing-induced referral of services to PacTox (e.g., which discount, at which time, offered by whom, in exchange for what), which in turn resulted in claims by PacTox to the government, there can be no false claim. For this reason as well, Relator's "pass-through" scheme does not state a claim under the FCA. *See Bly-Magee*, 236 F.3d at 1019.

### (3)   Unsupported Allegations about Testing Location Statements Are Insufficient to State a Claim.

Without any support, Relator alleges that PacTox instructed physicians to falsely state where tests occurred on unspecified "claim forms." (FAC ¶ 138, n.15.) Rule 9(b) requires a relator to plead a violation of the FCA with enough specificity – here, the who, what, where, how, and when a representative of PacTox allegedly instructed the physicians to misrepresent where the tests occurred – to enable defendants to answer the allegations without resorting to a blanket denial of wrongdoing. *See United States v. Anesthesia Servs. Assocs., PLLC*, 2019 WL 7372511, at *9–10 (M.D. Tenn. Dec. 31, 2019) (dismissing FCA claims in accordance with Rule 9(b) where a complaint did "not contain any details – what, when, where or how – about the pressure [defendant] purportedly exerted on the providers at the clinics he oversaw"). For example, Relator does not allege (i) which physicians falsified "forms"; (ii) whether the alleged "forms" were

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

actually submitted by physicians to insurers and were part of the physicians' claims for reimbursement; (iii) assuming such forms were submitted to insurers by physicians, which insurers received them (and whether such insurers included federal health care programs); (iv) what specific misrepresentations were made by the physicians on the forms; and (v) how such physician misrepresentations were material to the payment of a claim to the physicians.  In sum, Relator's bare-bones, general allegation "is precisely what Rule 9(b) aims to preclude."  *Cafasso*, 637 F.3d at 1057.  Finally, Relator never ties any allegedly false record related to testing location to the submission of an actual false claim to a government (or private) insurer.  *See Clausen*, 290 F.3d at 1311 ("Without the presentment of such a claim, while the practices of an entity that provides services to the Government may be unwise or improper, there is simply no actionable damage to the public as required under the False Claims Act.").

### b. Other Alleged "Inducements" to Physician Practices Are Insufficient to State a Claim.

**POCT Cups.**  Relator's allegation that PacTox's provision of POCT cups violated the AKS is insufficient to support a claim under the FCA.  *First*, while Relator claims that PacTox's provision of POCT cups to clients constituted "an illegal inducement" and remuneration (FAC ¶ 184), Relator simultaneously acknowledges that PacTox *stopped* providing cups when it learned that could be problematic under the AKS.  (*Id.* ¶ 153 n.19; Ex. O.)  Relator cannot, therefore, allege a *knowing and willful* violation of the AKS.[3]  *Cf. Vora*, 488 F. Supp. 3d at 564–65.  *Second*, Relator's allegations regarding the POCT cups are too vague to avoid dismissal.  Relator does not allege which clients received cups, whether provision of the cups induced any referrals, and whether any referred services resulted in claims.  Such generalized and unsupported allegations do not meet Rule

---

[3] Relator alleges that PacTox was aware of a legal opinion that raised "serious concerns" about POCT cups in late 2011 or early 2012 (FAC ¶ 154, Ex. L), but Exhibit L does not reference POCT cups nor was it addressed to PacTox.

NOTICE OF MOTION & MOTION TO DISMISS; MPA

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

9(b)'s particularity requirement.  *United States ex rel. Rauch v. Oaktree Medical Centre, P.C.*, 2020 WL 1065955, at *16–17 (D.S.C. Mar. 5, 2020) (granting motion to dismiss without leave to amend where relator failed to allege provision of POCT cups "necessarily resulted in the submission of false claims to the Government").

**Specimen Collectors.**  Relator's allegations regarding specimen collectors are insufficient to state a claim under the FCA.  As an initial matter, Relator fails to identify basic information, such as which practices were provided specimen collectors and over what period of time, and how any collectors were reimbursed. (*See* FAC ¶¶ 185-190.)  Relator also fails to allege any details tying the provision of specimen collectors to any actual claims submitted to government insurers. Moreover, this allegation does not state facts that specimen collectors amounted to remuneration.  In support of her claim that PacTox's placement of specimen collectors was improper, Relator attaches an unsigned contract which offers different pricing options depending on whether the practice or PacTox paid the specimen collector.  (*Id*., Ex. G.)  The terms of Exhibit G contradict Relator's claim by showing that PacTox adjusted its pricing depending on which entity paid for the specimen processor to ensure the provision of a collector did not amount to remuneration.[4]

**Debt Forgiveness.**  Relator similarly fails to connect her four-sentence allegation about "debt forgiveness" to any of her claims.  (*Id.* ¶¶ 191-194.)  Relator provides no information, for example, about the basis for the debt, the impact of the purported debt forgiveness, the actions PacTox took to resolve the debt, nor any facts supporting a continuing relationship after PacTox did not collect the debt.  A commercial dispute between two contracting parties over payment for services and settlement of that dispute is not remuneration under the AKS.  42 C.F.R.

---

[4] Relator likewise vaguely asserts collectors performed other work for practices unrelated to their collection duties, but she does not allege (nor could she) that PacTox instructed them to do so.  (FAC ¶¶ 188-189.)

**Davis Wright Tremaine** LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

§ 411.351(1) ("The forgiveness of amounts owed for inaccurate tests or procedures, mistakenly performed tests or procedures, or the correction of minor billing errors" is not considered remuneration.)

### c. Allegations Regarding Payments to Sales Representatives Are Insufficient to State a Claim.

For the first time in the FAC, Relator alleges that "[b]ecause she was an independent contractor and not paid a base salary, the commissions paid to Relator [and other Sales Representatives] for the procurement of government-insured business did not fall within the safe harbors for 'bona fide employ[ees] . . . .'" (FAC ¶ 19 [alteration omitted].)  Having read PacTox's Motion to Dismiss her original Complaint, Relator now strains credibility to reframe her employment relationship with PacTox to that of an independent contractor.  In her haste to rebrand herself as an independent contractor, Relator not only contradicts "judicial admissions" she made in another lawsuit she filed against PacTox,[5] but she also plainly controverts the materials she submitted to this Court.  *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("A statement in a complaint . . . is a judicial admission"); FAC, Ex. C. (Sales Representative Employment Agreement entered into between PacTox and *another* employee, which consistently refers to PacTox's sales representatives as "Employee[s].").

As an initial matter, Relator blithely refers to the phrase "'bona fide employee' as that term is defined in 26 U.S.C. § 3121(d)(2)," "applicable precedent," and "the 20-factor test used by the Internal Revenue Service" for determining who qualifies as an employee within the "Employee Bona Fide Safe Harbor" to the AKS (42 C.F.R. 1001.952(i)), but she neglects to sufficiently

---

[5] Concurrent with this Motion, PacTox has filed a Request for Judicial Notice (RJN) of Relator's previous complaint against PacTox filed in Los Angeles County Superior Court, in which she asserts that PacTox "commenced employment of Plaintiff as a 'Sales Representative'"; identifies the parties' agreement as one for "employment"; and repeatedly refers to her period of "employment" with PacTox. (RJN, Ex. A ¶¶ 5-6, 10, 12, 15-17, 32.)

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

elaborate on her employment status under the heightened pleading standard.  (FAC ¶ 121.)  The United States Supreme Court has held that whether a worker is an "employee" is based on "the hiring party's right to control the manner and means [of the work]," which is determined by considering at least twelve, non-exclusive factors.  *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323–24 (1992).  Here, Relator merely contends that she "had complete control over her territory [and] work schedule," and "had to develop her own leads," without evidence or explanation (e.g., what does "control over . . . territory" mean?) to support her assertions.  (FAC ¶ 117.)  *See Medtronic PLC*, 2021 WL 4816647, at *6 ("Relator must sufficiently allege facts showing payments fall outside protected categories in order to state a plausible claim for relief.").

Relator still fails to allege a single fact in support of scienter, i.e., that PacTox knew or recklessly disregarded that its compensation of Relator fell outside the Employee Bona Fide Safe Harbor, which is necessary to state an FCA claim based on an AKS violation.  *See, e.g., United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 997 (9th Cir. 2011) (finding FCA complaint deficient for failing to "clearly allege sufficient facts to support an inference or render plausible that [Defendant] acted while knowing that its Compensation Program fell outside the Safe Harbor Provision on which it was entitled to rely."); *see also Ctr. for Diagnostic Imaging, Inc.*, 787 F. Supp. 2d at 1218  (explaining that the AKS only "'criminalizes knowing and willful acceptance of remuneration in return for . . . referrals.'").

As a matter of fact, the FAC still fails to allege any details regarding the commission payments, other than to insist, in conclusory fashion, that they were "paid" to Relator and her sales representative colleagues.  (FAC ¶¶ 17, 19, 21, 112, 115, 124.)  All Relator intimates on the above points is, based "[o]n information and belief," that "as of 2016 PacTox had approximately 350 sales representatives nationwide, all of whom worked (or still work) as independent contractors and were

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

(or are still) paid on a straight-commission basis similar to Relator."  (*Id.* ¶ 21.)  Yet "[a]llegations made on 'information and belief' must state the factual basis for the belief in order to meet the governing heightened standard."  *Eastwestproto*, 2018 WL 6929332, at *5.  Relator cannot overcome this fundamental pleading requirement, rendering her recruiter "kickback" allegations ripe for dismissal.

### 2. Allegations Regarding "Unnecessary Testing" Are Inadequate.

Relator's alleged medically unnecessary testing scheme is also unavailing under the FCA.  (FAC ¶¶ 146-148, 163-170.)  Because Relator has dismissed all physician defendants, she contorts the FAC to direct her medical necessity allegation to PacTox, while acknowledging, as she must, that "laboratories do not and cannot treat patients or make medical necessity determinations.'"  *United States ex rel. Groat v. Bos. Heart Diagnostics Corp.*, 296 F. Supp. 3d 155, 158 (D.D.C. 2017) (quoting Publication of OIG Compliance Program Guidance for Clinical Laboratories ("OIG Guidance"), 63 Fed. Reg. 45,076, 45,079 (Aug. 24, 1998)); *United States v. Lab. Corp. of Am. Holdings*, 2019 WL 236799, at *3 (D.S.C. Jan. 16, 2019) ("In submitting a claim for reimbursement, a laboratory generally may rely on that doctor's order in submitting a claim for reimbursement as medically necessary.") (internal quotation omitted).[6]

### a. Allegations Regarding the Use of Custom Profiles Fail to State a Claim under the FCA.

Relator's lone effort to direct the medical necessity theory to PacTox is her allegation that PacTox provided physicians a "customized drug panel form to help them create standing orders" for urine drug testing.  (FAC ¶¶ 158-159, 164.)

---

[6] Relator cites 42 C.F.R. § 410.32(d)(3) for the proposition that CMS will deny claims without sufficient documentation of medical necessity (FAC ¶ 161); however, this regulation does not shift the obligation to determine medical necessity to the laboratory.  Rather, it establishes documentation requirements for laboratory claims and describes the actions CMS may take if the records provided do not establish the services were reasonable and necessary (including seeking records from the ordering provider).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Relator further claims that because this form "discouraged . . . the Physicians from tailoring drug tests to fit each patient's needs" it amounted to "a standing order for every patient referred by that physician's office."  (*Id*. ¶ 166.)  Relator then attaches a single purported custom order form signed by physician Dr. Gregory Ellison.  (*See id*., Ex. N.)  Conspicuously absent from the FAC, however, are allegations explaining which practices used these forms (other than Dr. Ellison), who was billed for the tests listed on these forms, and why any tests listed on the form that were subsequently specifically ordered for any particular patient on a particular date were not medically necessary.  *Cafasso*, 637 F.3d at 1057–58 ("[the] allegation, which identifies a general sort of fraudulent conduct but specifies no particular circumstances of any discrete fraudulent statement, is precisely what Rule 9(b) aims to preclude"); *see also United States ex rel. Lee v. SmithKline Beecham, Inc*., 245 F.3d 1048, 1051 (9th Cir. 2001) (finding relator's conclusory allegations failed to state a claim because they did not specify the types of tests implicated in the alleged fraud, identify the employees who performed the tests, or provide any dates, times, or places the tests were conducted).

Instead of providing these particulars, Relator simply asserts the custom profile form is a standing order, without elaborating further on how the form was used, or how it resulted in the submission of a false claim.  (FAC ¶ 164 and Ex. N.)  And even accepting Relator's allegation that physicians used this form to create a custom panel, she does not allege – nor could she – that the physician was obligated to apply that panel to each patient he/she saw absent a determination of medical necessity.  In fact, the custom profile form attached to Relator's FAC plainly undercuts that assertion.  *See id*., Ex. N ¶¶ 1, 4 ("I [physician] have the choice to order any or all PacTox drug tests <u>individually</u> at any time," and "I may only order those tests . . . believe[d] to be medically necessary for each individual patient.") (emphasis in original).  The form requires the physician to acknowledge that: "[U]sing a customized profile may result in the ordering of tests which are not

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

covered, reasonable or necessary." (*Id.* at ¶ 6.)  This admonition is drawn verbatim from the OIG Guidance, which Relator cites.  (*Id.* ¶ 158 n.22) (citing 1998 HHS OIG Compliance Program Guidance, 63 Fed. Reg. at 45079-80).  In other words, the exhibit to Relator's own Complaint highlights her inability to connect the custom profile to any particular patient or medically unnecessary test, and more critically, to a particular claim for medically unnecessary testing that PacTox knowingly submitted.  Such an omission is fatal to any FCA claim based on medically unnecessary testing.  *See Corinthian*, 655 F.3d at 997.

Finally, the Local Coverage Determination (LCD) referenced in Relator's complaint provides no support for her allegation.  (*See* FAC ¶ 168 n.25 (citing LCD L36037).)  First, the effective date of the cited LCD is December 1, 2015.  This post-dates Relator's employment and, equally important, post-dates the order forms cited by Relator (*see* Ex. M (individual patient requisitions dated between August 26, 2015 and September 1, 2015) and Ex. N (custom profile dated March 15, 2015)).  So, the LCD is not applicable to Relator's allegations.  Second, the plain language of the LCD is inconsistent with Relator's allegations.

The cited LCD defines "standing orders" and "blanket orders" as follows:

> 1.  <u>Standing Orders</u> - Test request for a specific patient representing repetitive testing to monitor a condition or disease for a limited number of sequential visits; individualized orders for certain patients for pre-determined tests based on historical use, risk and community trend patient profiles; clinician can alter the standing order.
>
> 2.  <u>Blanket Orders</u> - Test request that is not for a specific patient; rather, it is an identical order for all patients in a clinician's practice without individualized decision making at every visit.

LCD L36037 (last accessed January 19, 2022).  The LCD states that "[r]outine standing orders for *all patients in a physician's practice* are not reasonable and necessary." LCD L36037 (emphasis added).  But Relator does not allege (nor could she) that PacTox encouraged "routine standing orders for all patients in a physician's practice," nor that it employed "an identical order for all patients in a clinician's practice without individualized decision making at every visit." *Id.*  The

NOTICE OF MOTION & MOTION TO DISMISS; MPA

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

exhibits to Relator's complaint belie such an allegation.  Exhibit N is not an impermissible standing order for all patients or a blanket order because PacTox required ordering providers to submit patient-specific and date-of-service-specific test orders.  In fact, Exhibit M consists of patient-specific orders to run specific tests for a single date-of-service.  Against this factual backdrop, Relator alleges no facts supporting the conclusion that PacTox encouraged medically unnecessary testing, and no evidence that claims for medically unnecessary tests were knowingly submitted to the government as a result of custom profiles.

> **b.** **Relator's Sundry Allegations Regarding Alleged Medically Unnecessary Tests are Insufficient to State a Claim under the FCA.**

At various points in the FAC, Relator asserts that different tests or (categories of tests) are medically unnecessary.  These include separate qualitative screens for different tricyclic anti-depressants (TCAs) (FAC ¶¶ 147,148); confirmatory quantitative testing (*id.* ¶ 169); and multi-substance panels (*id.* ¶ 170).  None of these threadbare allegations support a claim that PacTox knowingly submitted a false claim for medically unnecessary services.

First, Relator's unsupported supposition that TCA-testing was medically unnecessary is not sufficient to state a claim.  *See Maa v. Ostroff*, 2013 WL 1703377, at *20 (N.D. Cal. Apr. 19, 2013) ("Plaintiff does not attempt to describe *why* any one procedure was unnecessary"); *Flanagan v. Bahal*, 2015 WL 9450826, at * 5 (D.N.J. Dec. 22, 2015) ("Because Relator provides no basis as to why these tests were medically unnecessary based on patient reported symptoms, these allegations are 'not only compatible with, but more likely explained by,' lawful behavior and therefore cannot 'plausibly suggest' actionable wrongdoing.") (quoting *Ashcroft*, 556 U.S. at 680).[7]  Second, Relator alleges no facts to indicate

---

[7] Relator's citation to addictioncenter.com (FAC ¶ 148 n.18.) is woefully inadequate to establish testing for TCA's as uniformly medically unnecessary, or as medically unnecessary for a particular patient.  *See United States v. Chang*, 2017 WL 10544289, at *12 (C.D. Cal., July 25, 2017) (dismissing allegations of medically

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

PacTox encouraged this testing or knew that a TCA-testing claim it submitted lacked medical necessity.  Relator does not tie the testing for TCAs to her specious custom profile argument (which for the reasons stated above fails), nor could she, as the single custom profile attached to the complaint does not call for testing for TCAs.  (FAC, Ex. N at 1.)

With regard to confirmatory quantitative testing, the attached custom profile form references confirmatory testing of <u>positive</u> results.  *See id*., Ex. N at 2 (allowing physician to request "Reflex to Quantitative Drug testing [f]or <u>each</u> **positive** drug identified . . . .").  Relator does not explain how providing physicians this option encourages medically unnecessary testing nor cite any basis for knowledge on the part of PacTox of submission of a medically unnecessary claim.  Of course, there are no specific patients or false claims alleged in support of this theory.  Finally, Relator's allegation regarding "unnecessary multi-substance panels," is so generalized and untethered from any specific patient, physician, or claim, that it does not approach the level of specificity required to state a claim under the FCA.

### 3. Unbundled Test Allegations Do Not State a Claim under the FCA.

Relator's  theory that PacTox submitted "unbundled" claims for multiple tests run on a single specimen does not support her FCA claim.  The thrust of this allegation is that PacTox billed multiple tests separately under a discontinued code, when Relator claims it should have "bundled" the tests and submitted them under a single code.  (*Id*. ¶¶ 171-178.)

There is no allegation that such "unbundled" claims were submitted fraudulently or with knowledge of falsity.  *See Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1048 (9th Cir. 2012).  If PacTox used a billing code that had been

_____

unnecessary testing services where "Relators' [sic] fail to allege a critical component of this type of FCA claim:  why the . . . tests are medically unnecessary.").

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

discontinued by Medicare, Medicare presumably would deny the claim. Relator does not explain why PacTox would use a discontinued code in an attempt to defraud a government payor. Relator has thus failed to establish that any purported coding errors were material, much less fraudulent. "[A] violation of healthcare regulations or guidelines, standing alone, does not necessarily violate the FCA. That requires an attempt to defraud the government, not just a billing error." *United States v. Vora*, 2022 WL 89177, *2 (W.D. Ky. Jan. 7, 2022).

### 4. The FAC Fails to Plead a Conspiracy to Violate the FCA.

Relator's conspiracy claim under 31 U.S.C. § 3729(a)(1)(C) must also be dismissed. Relator alleges that PacTox "conspired with multiple physicians" to violate the FCA. (FAC ¶¶ 206-207.)[8] A viable claim for a conspiracy to violate the FCA requires an underlying actionable FCA claim. *See, e.g.*, *United States ex rel. Woodruff v. Haw. Pac. Health*, 560 F. Supp. 2d 988, 1004 (D. Haw. 2008) ("Absent evidence of a false claim as alleged, Defendants did not conspire to have a false claim paid by the United States."), *aff'd*, 409 F. App'x 133 (9th Cir. 2010). Because Relator has failed to allege a valid, underlying FCA claim, the conspiracy claim against PacTox necessarily fails as a matter of law.

In addition, Relator has failed to allege, let alone with the particularity required under Rule 9(b), the existence of an agreement between PacTox and any physician to cause the United States to pay a false claim. Conspiracy may be sufficiently alleged where, for example, the complaint alleges "implicit and explicit agreements" between defendants, "the time frame the agreements [at issue] were in effect, the amount of the kickbacks, and the amount of [product or services] ordered from [a defendant] as a result." *United States v. Orthopedic Alliance, LLC*, 2020 WL 8173025, at *9 (C.D. Cal. Nov. 19, 2020). In contrast, courts have dismissed

---

[8] Relator does not allege a conspiracy between PacTox and Relator or any other sales representative. There cannot, therefore, be a conspiracy related to PacTox's payments to sales representatives.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

conspiracy claims where "Relators [failed] to show the existence of an unlawful agreement between defendants to induce the government to pay a false claim, at least one act performed in furtherance of that agreement, and resulting harm." *Eastwestproto, Inc.*, 2018 WL 6929332, at *7. Here, Relator's complaint attaches three lab services agreements (FAC, Exs. E, G, H) *none* of which evidence any agreement to violate the FCA.

### 5. The Statute of Limitations Precludes FCA Claims Pre-Dating April 15, 2013.

The FCA requires a Relator to bring an action within the later of: (1) six years after the date on which the violation of the FCA occurs; or (2) three years after the date when facts material to the right of action are known or reasonably should have been known by a government official responsible to act, but in no event more than ten years after the date on which the violation occurred. 31 U.S.C. § 3731(b)(1), (2). "The burden of alleging facts which would give rise to tolling falls upon the plaintiff." *Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993). Accordingly, to avail herself of the ten-year statute of limitations in § 3731(b)(2), Relator is required to plead facts supporting its application. *See United States ex rel. Pasqua v. Kan-Di-Ki LLC*, 2012 WL 12895229, at *11 (C.D. Cal. June 18, 2012). She has not done so. As Relator filed the present suit on April 15, 2019, her FCA claims must be dismissed to the extent they include claims submitted before April 15, 2013.

### B. Relator's State Law Claims Should Be Dismissed.

### 1. This Court Should Decline to Exercise Supplemental Jurisdiction Over the State Law Claims.

Relator provides no independent jurisdictional grounds to bring her state law claims in this federal lawsuit. Once the Court has determined that Relator's federal law claims should be dismissed, the Court should exercise its discretion to decline to exercise supplemental jurisdiction over the state law claims. *See United States ex rel. Modglin v. DJO Global Inc.*, 114 F. Supp. 3d 993, 1028 (C.D. Cal. 2015)

22

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

(declining supplemental jurisdiction over state FCA claims after dismissing all federal claims for failure to allege fraud with particularity).

### 2. The CFCA Claims Are Subject To Dismissal for the Same Reasons as the FCA Claims.

If this Court is inclined to retain jurisdiction over the state law claims, the CFCA claims should be dismissed for the same failures in pleading as the FCA claims. The CFCA is patterned on the FCA and imports much of the same analysis. *Rothschild v. Tyco Internat. (US), Inc.,* 83 Cal.App.4th 488, 495 (2000); *see Bailey v. Gatan, Inc.*, 783 F. App'x 692, 693–94 (9th Cir. 2019). Case law interpreting the FCA is "authoritative in construing the CFCA to the extent the language of the two acts are similar." *United States v. Amsurg Corp.*, 2014 WL 7336671, at *5 (E.D. Cal. Dec. 24, 2014). Like the FCA, the CFCA requires the pleading of a submission of a false claim with particularity. *See United States v. Somnia, Inc.*, 339 F. Supp. 3d 947, 955 (E.D. Cal. 2018). Just as Relator has failed to adequately plead FCA claims in her Complaint, she similarly fails to sufficiently allege facts to support her CFCA claims.[9] These pleading deficiencies require dismissal of the Fourth, Fifth, and Sixth Causes of Action, Cal. Gov. Code § 12651(a)(1), (2), (3).[10]

### 3. The CIFPA Claims Should Likewise Be Dismissed.

#### a. The CIFPA Claims are Wholly Barred by the Statute of Limitations.

CIFPA requires that civil actions be brought within "three years after the discovery of the facts constituting the grounds for commencing the action." Cal.

---

[9] Relator's CFCA claims premised on alleged violations of the Medi-Cal Anti-Kickback Statute, must be dismissed for the same failures in pleading described related to the AKS. *See People v. Palma*, 40 Cal.App.4th at 1565 ("Section 14107.2 largely adopts the language of the federal statute on which it is based.").

[10] The CFCA statute of limitations is identical to the FCA and compels the same claim cutoff date. *See* Cal. Gov. Code § 12654(a) (2013).

23

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Ins. Code § 1871.7(l)(1); *accord United States ex rel. Brown v. Celgene Corp.*, 2014 WL 3605896, at *11 (C.D. Cal. July 10, 2014).  Relator alleges that she worked for PacTox until September 15, 2015 (FAC ¶ 33).  She did not file the present suit until April 15, 2019, more than three-and-a-half years later.  Accordingly, the CIFPA claims are untimely.

> **b.   The CIFPA Claims are Further Subject to Dismissal for the Same Reasons as the FCA Claims.**

As with the FCA and CFCA claims, CIFPA claims are fraud claims and therefore must be pled with particularity.  *Maa*, 2013 WL 1703377, at *21 (plaintiff's allegations failed to state a claim under Section 1871.7 "for the same reason as … under the FCA – because Plaintiff has failed to allege [facts] with any particularity and only states conclusory assertions").  Relator's CIFPA claim is based on the same faulty underlying general allegations as discussed above in connection with the FCA claims, with only conclusory restatements of statutory language asserted in the claims.  (*See* FAC ¶¶ 226-228.)  As such, for the reasons described above, Relator fails to satisfy the stringent pleading requirements for her CIFPA claims.  Indeed, Relator fails to identify a single private insurer supposedly defrauded, or submission of a single false or fraudulent claim.  *See United States v. Orthopedic Alliance, LLC*, 2020 WL 6151084, at *8 (C.D. Cal. July 13, 2020) ("[B]ecause Relators have failed to plead adequately the submission of claims, Relators have not adequately pled their Claims for Relief under the CIFPA").  To the extent Relator asserts her CIFPA claim with respect to her "unnecessary testing" allegations, the claim fails for the reasons cited above and for the additional reason that she points to no statute or certification requiring claims submitted to private insurers to be medically necessary.  *Maa*, 2013 WL 1703377 at *21.  Finally, Relator's deficient allegations with regard to conspiracy (discussed *supra* Section IV.A.4) similarly cause her § 1871.7(b) claim to fail to the extent that claim alleges a conspiracy.  These overly general allegations that PacTox violated CIFPA fail to

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

provide notice under Rule 8(a), much less provide the particularity required by Rule 9(b).

## V.  THE COURT SHOULD DENY LEAVE TO AMEND

District courts may permit a curative amendment to dismissed complaints under Rule 12(b)(6) unless amendment would be inequitable or futile.  *See Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990).  "[L]eave to amend need not be given if the plaintiffs repeatedly have failed to cure deficiencies by previous amendments, or if further amendments are likely to be futile."  *Grogan v. Health Officer of County of Riverside*, 221 F.3d 1348, 1348 (9th Cir. 2000) (upholding denial of leave to amend where amendment could not cure complaint's deficiencies).  Despite her status as a former sales representative of PacTox, and the aid of PacTox's original Motion to Dismiss (Dkt. 62), Relator has failed to allege facts that support any of her claims.  Relator can provide no credible reason why an additional opportunity to amend her Complaint would cure her continuing pleading deficiencies.  Over six years have passed since her separation from PacTox, and her conclusory allegations make plain that she simply has no knowledge of false claims submissions, notwithstanding her former insider status.  Accordingly, this Court should dismiss the Complaint with prejudice.

## VI.  CONCLUSION

For the reasons set forth above, Defendant respectfully requests that this Court dismiss the FAC with prejudice.

DATED: February 7, 2022               DAVIS WRIGHT TREMAINE LLP

By: */s/ Matthew D. Diggs*
MATTHEW DIGGS
Attorneys for Defendant
PACIFIC TOXICOLOGY
LABORATORIES

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899